**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| DOUGLAS L. BAILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:17-cv-0776-LCB |
| | ) | |
| JACKSON COUNTY BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is before the Court on the Defendants' motions for summary judgment. (Docs. 51 and 53). The Court will also address the Plaintiff's motion to strike. (Doc. 59). The motions have been fully briefed and are ripe for review. For the reasons that follow, the Court finds that the Defendants' motions for summary judgment are due to be granted. Further, the Plaintiff's motion to strike is due to be denied as moot.

### I. Background and Undisputed Facts

The Plaintiff, Douglas L. Bailer, sued his former employer, the Jackson County Board of Education ("the Board"), as well as Bart Reeves, the former Superintendent of the Jackson County School System, and Tina Hancock, the former Chief School Financial Officer ("CSFO") of the Jackson County School

System.[1]  In Count I of his complaint, Bailer alleged, pursuant to 42 U.S.C. § 1983, that he was constructively terminated from his job in retaliation for engaging political speech that is protected by the First Amendment to the United States Constitution.  In Count IV of his complaint, Bailer alleged, pursuant to 42 U.S.C. § 1983, that Reeves and Hancock conspired to deprive him of his Constitutional rights, including his First Amendment right to free speech.  In Counts II and III of his complaint, Bailer alleged that he was discriminated against on the basis of his age and gender.  However, he voluntarily dismissed those counts on August 14, 2018.  (Doc. 45).

Bailer was employed by the Board from 1990 until February 1, 2016, both as a teacher and, since 2009, the Information and Technology Specialist in the school system's central office.  Hancock also worked in the central office in her position as the CSFO.  Reeves was appointed Superintendent by the Board after the previous Superintendent, Ken Harding, resigned in 2015.  Pursuant to Alabama law, Reeves was to serve the remainder of Harding's term, which ended in December of 2016.  After that term ended, Reeves was required to win an election

_____

[1] Both Reeves and Hancock are sued in their individual capacities.  Bailer also named Kevin Dukes, the current Superintendent of the Jackson County Schools, as a defendant.  However, Bailer voluntarily dismissed Dukes on June 8, 2017.  (Doc. 16).

in order to serve another term as Superintendent. Reeves lost that election to Kevin Dukes.

On or about December 2, 2015, Hancock reported to Reeves that Bailer had inappropriately touched her on several occasions beginning in 2013. Specifically, Hancock told Reeves that Bailer touched her breast and her "bottom." Hancock also submitted to Reeves a written allegation as well as a timeline containing dates and descriptions of incidents in which Bailer allegedly touched her. (Doc. 49-1, p. 89-92). As will be discussed below, Bailer denies these allegations and claims that Hancock and Reeves fabricated the charges in order to punish Bailer for supporting Reeves's political rival, Kevin Dukes. However, it is undisputed that Hancock did in fact make the allegations.

On December 9, 2015, Bailer was summoned to a meeting in Reeves's office where he met with Reeves and John Porter, the attorney for the Board. Bailer secretly recorded the meeting.[2] The transcript of the recording reveals that Reeves informed Bailer of the allegations against him and placed him on paid administrative leave effective immediately. However, Reeves and Porter stated that the identity of the complaining employee was confidential at that point in time.

---

[2] Bailer had the recording transcribed and attached it to his deposition as Exhibit 10. (Doc. 49-1, p. 118-132). The Defendants have not challenged the authenticity or accuracy of the recording or the transcript.

Reeves and Porter then explained to Bailer that a formal investigation would ensue in which two individuals, a male and a female, would be appointed to investigate the allegations. If the investigation suggested that the allegations were true, Reeves could recommend to the Board that Bailer be terminated. The ultimate decision would then be made by a vote of the Board.

Reeves and Porter also informed Bailer that the complaining employee would agree to resolve the case informally, i.e., without conducting a formal investigation, provided that Bailer relocate his office to a different building and resign at the end of the school year. Reeves then told Bailer that the complainant and her husband would not pursue criminal charges against Bailer if he agreed to the informal resolution[3]. Reeves stated that Bailer had until the close of business the following day to make his decision.

Bailer vehemently denied the allegations and insisted that he had never sexually harassed anyone. Bailer has maintained that position throughout these proceedings. In his complaint, Bailer alleged that Hancock made up the allegations and then conspired with Reeves to have Bailer terminated. According to Bailer's complaint, Reeves wanted Bailer to be terminated because, he says, Bailer supported Reeves's opponent in the 2016 election for Superintendent.

_____

[3] Hancock subsequently filed a civil lawsuit against Bailer in the Circuit Court of Jackson County. That case is still pending as of the date of this memorandum opinion.

Bailer claimed that Reeves and Hancock conspired with each other to manufacture the allegations so that Reeves would have a valid reason to recommend to the Board that Bailer be terminated. This, Bailer said, was in retaliation for Bailer supporting Kevin Dukes's campaign for Superintendent.

Bailer subsequently hired an attorney who communicated with Reeves and Porter on Bailer's behalf. On January 5, 2016, Bailer entered into an agreement with Reeves reflecting that allegations of misconduct had been made against Bailer and that, although Bailer denied the allegations, Bailer would submit the paperwork to retire from the school system effective February 1, 2016. (Doc. 49-1, p. 133). The agreement noted that only a "limited investigation" had been conducted with no conclusions or findings having been made. Therefore, the agreement provided that no documentation or reference to the allegations would be placed in Bailer's personnel file; that a neutral employment reference would be given to any future prospective employers; that Bailer would not seek reemployment with the Board; and that the agreement was "intended to resolve all current issues existing between Dr. Bailer and the Jackson County Board of Education." (Doc. 49-1, p. 134). Bailer followed through and ultimately retired from the school board on February 1, 2016.

The remainder of the voluminous record contains testimony regarding disputed facts surrounding the political environment that existed within the central

office between the time that Reeves was appointed in 2015 until he lost his reelection bid to Kevin Dukes in 2016. There are numerous of pages of deposition testimony and affidavits in which various witnesses describe their perceptions of the political factions that existed in the office and in the community as a whole. Some witnesses describe the environment in the central office as politically charged, with one faction supporting Reeves and another supporting Dukes. Those witnesses claimed that Reeves knew who various employees supported in the election, and that he had a list of political enemies in the office that he wished to have terminated. There are disputes as to whether Reeves knew that Bailer supported Dukes; whether Hancock was given more power and authority as CSFO when Reeves became Superintendent; and the extent of Reeves's influence over the Board. However, as will be discussed below, it is not necessary to resolve those disputes in order to decide the issues presented in the Defendants' motions.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden

of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla.

1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III. The Defendants' Argument

All of the defendants claim that they are entitled to summary judgment as to Bailer's retaliation claim. The Board is not named as a party to the civil conspiracy claim. Therefore, only Reeves and Hancock seek summary judgment on that count. The Court will address each claim in turn.

### A. Bailer's Retaliation Claim

In his complaint, Bailer alleged that he engaged in protected political speech by supporting Kevin Dukes's bid to be elected Superintendent. Bailer stated that it was well known in the school system's central office and in the community that he supported Dukes. Bailer stated that he placed a sign in his yard indicating that support. Bailer claimed that the Board, acting through Reeves[4], retaliated against him based on that political expression. According to Bailer, his retirement from the school system was not voluntary and amounted to constructive discharge.

In discussing First Amendment claims such as the one raised in the present case, the Eleventh Circuit has held:

---

[4] Both the Board, Reeves, and Hancock raise essentially the same arguments in their respective motions for summary judgment regarding Bailer's retaliation claim. Bailer imputes Reeves's actions to the Board. The Court will therefore address both arguments in a single section of this memorandum opinion.

To prevail on a First Amendment political-association claim, a plaintiff must show that (1) he engaged in constitutionally protected political affiliation or held constitutionally protected political beliefs, and (2) his protected conduct was a "substantial or motivating factor" in the decision to take adverse action against the plaintiff. *Holley v. Seminole Cty. Sch. Dist.*, 755 F.2d 1492, 1500 (11th Cir. 1985) (*citing Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If the plaintiff meets these requirements, the burden shifts to the employer, who must demonstrate by a preponderance of the evidence that it would have made the same employment decision, even had the plaintiff never engaged in the protected conduct. *Id*. (*citing Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Paschal v. Fla. Pub. Emp't Relations Comm'n*, 666 F.2d 1381, 1384 (11th Cir.), cert. denied, 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982)).

*Rodriguez v. City of Doral*, 863 F.3d 1343, 1350 (11th Cir. 2017).

The Defendants do not dispute that Bailer's support of Dukes constituted protected political speech, thus the first element is not at issue in this case. Further, it is undisputed that a constructive discharge constitutes an adverse employment action. However, the Board maintains that Bailer has failed to put forth any evidence that he suffered an adverse employment action. Specifically, the Board claims that because Bailer voluntarily retired from the school system, he cannot prove that he suffered an adverse employment action. *See Rodriguez*, 863 F.3d at 1352, *citing Hargray v. City of Hallandale*, 57 F.3d 1560, 1567 (11th Cir. 1995)("If [an employee's] resignation was voluntary — even though triggered by Defendants' actions — [the employee] cannot show that he suffered an adverse employment action and cannot prevail on his First Amendment unlawful-

retaliation claim."). Therefore, the Board says, there is no genuine issue of material fact as to the second element of Bailer's claim.

As noted above, it is undisputed that Bailer was not terminated from his job, and that he retired from the school system. The record contains the above-mentioned written agreement between Bailer and Reeves as well a letter written by Bailer in which he expressed his intention to retire from his employment after "careful consideration" of his options. (Doc. 49-1, p. 136). In his deposition, Bailer also admits that he is currently receiving retirement benefits that he earned through his years of employment with the school system. However, Bailer has alleged that his retirement was not voluntary, and that it amounted to constructive discharge.

In *Hargray*, the Eleventh Circuit explained its standard for evaluating whether an employee's resignation amounts to constructive discharge as follows:

> [E]mployee resignations are presumed to be voluntary. *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992); *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir.1988); *Christie v. United States*, 518 F.2d 584, 587, 207 Ct. Cl. 333 (1975). "This presumption will prevail unless [the employee] comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." *Christie*, 518 F.2d at 587. Those circuits that have addressed whether a resignation was involuntary agree that the court must examine the surrounding circumstances to test the ability of the employee to exercise free choice. *See Angarita*, 981 F.2d at 1544; *Parker v. Board of Regents*, 981 F.2d 1159, 1162 (10th Cir.1992); *Alvarado*, 859 F.2d at 453–54; *Stone*, 855 F.2d at 173; *Scharf v. Dep't*

*of the Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983); *Christie*, 518 F.2d at 587.

The relevant cases reveal that there are two situations in which an employee's resignation will be deemed involuntary, and thus a deprivation of due process: (1) where the employer forces the resignation by coercion or duress, *see, e.g., Schultz v. United States Navy*, 810 F.2d 1133, 1135–37 (Fed. Cir. 1987); or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee, *see, e.g., Scharf*, 710 F.2d at 1574–76; *Covington v. Department of Health & Human Serv.*, 750 F.2d 937, 942–44 (Fed. Cir.1984).

57 F.3d at 1568.

In his complaint, Bailer alleged that his retirement was coerced and, therefore, was not voluntary. In *Hargray*, the Eleventh Circuit held that "[u]nder the coercion or duress theory, we consider whether, under the totality of the circumstances, the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign." *Id.* The court then set forth a list of factors to consider in determining whether a resignation was voluntary:

(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

57 F.3d at 1568. The Court agrees with the Board's assertion that all five of these factors demonstrate that Bailer's retirement was voluntary.

12

It is undisputed that Bailer had an alternative to retirement. "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges. *Pitt v. United States*, 420 F.2d 1028, 190 Ct. Cl. 506 (1970). Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because 'the fact remains that plaintiff had a choice. [Plaintiff] could stand pat and fight.'" *Hargray* 57 F.3d at 1568, *quoting Christie*, 518 F.2d at 587.

Bailer does not dispute that he could have remained on paid administrative leave pending the results of an investigation. Had the investigation revealed that Hancock's allegations were false, Reeves may not have recommended that Bailer be terminated, and Bailer could have continued his employment with the Board. Even assuming, *arguendo*, that the investigation had been unfavorable to Bailer and that Reeves consequently recommended that the Board terminate him, Bailer would have been entitled to a full evidentiary hearing before the Board prior to any vote on his termination. *See* § 16-24C-6, Ala. Code 1975. Bailer would have also had the right to appeal an adverse decision of the Board to the Alabama Court of Civil Appeals. *See* § 16-24C-6(g), Ala. Code 1975. Thus, the record establishes that Bailer had a real alternative to retirement.

Bailer's argument that he had no alternative to retirement is based solely on his belief that he would be terminated regardless of the outcome of any

investigation. In his deposition, Bailer testified that it was his belief that a majority of the Board would vote for anything that Reeves proposed. That belief was based on a conversation that Bailer had with Board member Chad Gorham. According to Bailer, Gorham told him "in no uncertain terms that if Dr. Reeves wanted me gone, that he would have no trouble getting at least three votes, if not four, and I would be terminated." (Doc. 49-1, p. 41).

However, "'the assessment [of] whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation ... is irrelevant. *Stone*, 855 F.2d at 174. *See Christie*, 518 F.2d at 587–88. Moreover, 'the mere fact that the choice is between comparably unpleasant alternatives ... does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary.'" *Hargray*, 57 F.3d at 1568, *quoting Stone*, 855 F.2d at 174. Bailer has failed to point to any evidence in the record - aside from his and Gorham's subjective beliefs – that Bailer would not have received a fair investigation and hearing before the Board.

As to the four remaining factors, there is no dispute that Bailer understood the nature of the choice he was given and that he had the advice of counsel. The record contains a written agreement between Bailer and Reeves regarding the resolution of the matter. (Doc. 49-1, p. 133-135). That letter, signed by Bailer and

Reeves, clearly lays out the agreement for Bailer to retire in order to avoid a formal investigation with the possibility of termination.

Additionally, there is no evidence that Bailer was not given sufficient time to weigh his options. Although Reeves initially gave Bailer one day to make his decision, the record reveals that Bailer did not ultimately make his decision until January 5, 2016, almost a month after his meeting with Reeves and Porter. Thus, Bailer had a reasonable amount of time to consult with his attorney and make his decision. There is also no evidence in the record that Reeves or Porter imposed a deadline for Bailer's decision when discussing the matter with Bailer's attorney. Additionally, there is no evidence that Bailer was not allowed to select the effective date of his retirement. The written agreement provided that Bailer would use his accrued sick leave from January 5, 2016, until February 1, 2016, the effective date of his retirement. Nothing suggests that Bailer was not permitted to negotiate that arrangement. Finally, there is no dispute that Bailer was represented by an attorney when he made the decision to retire. Therefore, in considering the totality of the circumstances as well as the five factors set out in *Hargray*, the Court finds that there is no genuine issue of material fact as to whether Bailer's retirement was procured by coercion or duress.

Bailer also appears to argue that his retirement was the product of a misrepresentation by Reeves regarding the possibility of criminal charges being

brought against him. In his responses to the defendants' motions, Bailer asserts that Reeves knew that criminal charges could not be brought against him because, Bailer said, the statute of limitations had run out. However, that contention is based on Bailer's assumption that the only criminal charge that could be brought for his alleged conduct was for criminal harassment, a misdemeanor with a one-year statute of limitations. *See* § 13A-11-8, Ala. Code 1975 and § 15-3-2, Ala. Code 1975. Similar to Bailer's argument regarding coercion, there is simply no evidence in the record that criminal harassment was the only charge that could have been filed.

Based on Hancock's allegations, Bailer could have potentially been charged with first-degree sexual abuse, a Class C felony. *See* § 13A-6-66(a)(1), Ala. Code 1975 ("A person commits the crime of sexual abuse in the first degree if he or she … [s]ubjects another person to sexual contact by forcible compulsion."). In her timeline of Bailer's alleged conduct, Hancock wrote that on one occasion, as she was leaving Bailer's office, Bailer "put his arm around [her] to hug [her] and turned [her] away from the door so that the people in the hallway could not see, then moved his hand to [her] bottom and used his other hand to grab [her] right breast." (Doc. 49-1, p. 90). That allegation could be construed to charge that Bailer used forcible compulsion to touch Hancock for the purpose of gratifying a sexual desire. *See* § 13A-6-60, Ala. Code 1975(defining forcible compulsion and

sexual contact). Thus, Bailer could have potentially been charged with a felony that carried a five-year statute of limitations. *See* § 15-3-5, Ala. Code 1975. Accordingly, Bailer's contention that Reeves knew that criminal charges could not be brought is unfounded. Even viewing that evidence in the light most favorable to Bailer, the Court concludes that a reasonable jury could not find that Bailer's retirement was induced by misrepresentation of a material fact.

The one exception to the rule discussed above, i.e., that resignations are presumed to be voluntary, is where "the employer actually lacked good cause to believe that grounds for the termination and the criminal charges existed." *Hargray* 57 F.3d at 1568. In his response, Bailer argues that Reeves knew that Hancock's allegations were "not accurate." (Doc. 75, p. 43). Bailer bases this contention on his assertion that Reeves failed to perform any type of investigation into Hancock's allegations, and that Reeves knew that Hancock edited her timeline after giving it to Porter. However, the limited investigation into Hancock's allegations was based on the fact that Bailer decided to retire in lieu of being subject to a formal investigation. Further, the fact that Hancock and Porter edited certain dates on Hancock's timeline does not support the contention that Reeves knew that Hancock's allegations were false. In fact, the record reveals that Reeves did not see the timeline until after the December 9th meeting.

Bailer has pointed to no evidence, other than his subjective beliefs, suggesting that Reeves lacked good cause to believe that grounds for an investigation and possible termination existed. In fact, Bailer conceded that he had no such evidence during his deposition when the following exchange occurred:

> Q: Do you have any information that [Reeves] didn't believe the allegations?
>
> A: I have no information that he didn't believe them. Everything he said indicated that he did believe them.

(Doc. 49-1, p. 20). Accordingly, Bailer's own testimony belies his contention that Reeves knew the allegations were false.

This Court has reviewed the record in its entirety and has found no evidence, aside from Bailer's unsupported opinions, to suggest that Reeves or the Board knew that Hancock's allegations were false or that they misrepresented any facts to Bailer regarding the consequences of those allegations. The record is therefore devoid of any evidence to rebut the presumption that Bailer's decision to retire was voluntary. Additionally, the record contains no evidence that Bailer's retirement was coerced, or that his retirement was the result of a misrepresentation by Reeves or the Board. Bailer's own testimony suggests that he elected to retire in order to avoid the potential negative consequences and publicity that a formal investigation could have brought. *See* (Doc. 49-1, p. 44)(Bailer testified that he "resigned to maintain [his] employability. And that falls under smearing my good name.").

Accordingly, there is no genuine issue of material fact as to whether Bailer's retirement was voluntary. It follows that there is no genuine issue of material fact as to whether Bailer was subject to an adverse employment action. Therefore, Bailer is unable to prove that "his protected conduct was a 'substantial or motivating factor' in the decision to take adverse action against the plaintiff[,]" because there was no adverse action. *See Rodriguez,* 863 F.3d 1343 at 1350. Thus, summary judgment is due to be granted in favor of Reeves and the Board as to Count I of Bailer's complaint.

The Defendants also argue that, even if Bailer's retirement was involuntary, there is no evidence to suggest that Bailer's speech was a motivating factor in reaching the signed agreement between Bailer and Reeves. The Board also asserts in the alternative that Reeves would have taken the same actions even if Bailer had not engaged in the political speech at issue. However, because the Court is granting summary judgment based on the lack of a genuine issue of material fact as to whether Bailer suffered an adverse employment action, it is unnecessary to address these issues.

## B. Bailer's Conspiracy Claim

Reeves and Hancock both argue that they are entitled to summary judgment on Bailer's conspiracy claim for four reasons: (1) Bailer can point to no evidence

in the record to establish that Reeves and Hancock reached an agreement or understanding to deprive Bailer of a constitutional right; (2) Bailer's conspiracy claim is barred by the intracorporate conspiracy doctrine; (3) Reeves and Hancock are entitled to qualified immunity; and (4) Bailer's claim is barred by *res judicata* because, they say, this claim was a compulsory counterclaim to Hancock's lawsuit against Bailer in the Jackson County Circuit Court. As discussed below, this Court finds that the record contains no evidence of an agreement between Reeves and Hancock and thus no genuine issue of material fact as to whether a civil conspiracy existed. Accordingly, an analysis of the Defendants' remaining arguments is unnecessary.

The Eleventh Circuit has held:

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement."). Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992).

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). Thus, in order to prevail at trial Bailer would be required to prove (1) that there was an agreement or understanding between Reeves and Hancock to violate his rights, and (2) that there was an actual violation of those rights.

This Court has reviewed the record in its entirety and has found no evidence of an agreement or understanding between Reeves and Hancock. During his deposition, Bailer was asked why Hancock would fabricate an allegation of misconduct about him to which Bailer replied, "My <u>theory</u> is that I was a supporter of a political rival, and she wanted to silence me, and her and Bart Reeves colluded to make up these allegations and force me out of my job, to punish me." (Doc. 49-1, p. 18)(emphasis added). Bailer was also specifically asked if he had any evidence that Reeves and Hancock reached an agreement to deprive him of a constitutional right. Bailer replied as follows:

> I base [my belief that a conspiracy existed] on the fact that Ms. Hancock enjoyed a place of power when Dr. Reeves was there that she never had before. She relished in that, she enjoyed it. Dr. Reeves had a position of power that he said he'd always wanted to be a superintendent. And <u>I think</u> they did not want to lose that. And just looking at all the evidence that we've put out in front of us, <u>the only conclusion that I can come up with</u> is that they got together and decided to punish me for being a supporter of Kevin Dukes.

(Doc. 49-1, p. 81)(emphasis added). This type of speculation is the only suggestion in the record that Reeves and Hancock formed any kind of agreement

regarding Bailer's employment. The record is devoid of any objective evidence supporting Bailer's conclusory assertions. The Eleventh Circuit has held that "'unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005), *quoting Hedberg v. Ind. Bell Tel. Co*., 47 F.3d 928, 931–32 (7th Cir. 1995).

In his response to Reeves's and Hancock's assertion that no evidence of an agreement existed, Bailer provided only a single paragraph in which he reiterated his theory that Reeves and Hancock wanted to have him terminated because he was a political rival. Bailer again points to the fact that Hancock edited certain dates on her timeline and argues that this is evidence of a conspiracy between her and Reeves. However, Bailer does not explain *how* this evinces an agreement between Reeves and Hancock. Even viewing that fact in the light most favorable to Bailer, the Court finds that it does not support the contention that Reeves and Hancock came to an agreement and thus conspired to have Bailer terminated. Moreover, the record contains no additional evidence, circumstantial or otherwise, demonstrating that Reeves and Hancock reached an agreement or understanding to deprive Bailer of any right. An agreement is a necessary element to prove a conspiracy. *See*

B*ailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla*., 956 F.2d 1112, 1122 (11th Cir. 1992)("[T]he linchpin for conspiracy is agreement[.]").    Because Bailer offered no evidence of an agreement, there is no genuine issue of material fact as to his conspiracy claim.    Therefore, summary judgment is due to be granted in favor of Reeves and Hancock as to Count IV.

### IV.    Bailer's Motion to Strike

The record in this case contains a recording made by Hancock of a conversation between her and Bailer that took place in her office on April 7, 2014. Hancock also prepared a transcript of the recording.  (Doc. 49-1, p. 92).  According to Hancock, Bailer's responses to certain statements in that recording amounted to an admission that he touched her inappropriately therefore demonstrating that her claims were true.  Bailer filed a motion to strike the audio recording as well as any references to the recording in Hancock's affidavit and the Defendants' motions for summary judgment.  However, the Court has found no need to rely on or otherwise consider that recording to support its decision.  Accordingly, Bailer's motion to strike is denied as **MOOT**.

### V.    Conclusion

Having considered the Defendants' briefs in support of their motions for summary judgment, Bailer's responses thereto, the Defendants' replies, and the evidence submitted in support of the parties' positions, the Court concludes that there is no genuine issue of material fact as to at least one element of each of Bailer's claims. The undisputed facts demonstrate that Bailer voluntarily retired from the school system in order to avoid a formal investigation and its potential consequences. The only testimony contrary to this conclusion consists of Bailer's unsupported speculation that he would be fired regardless of the outcome of an investigation because, he opined, a majority of the Board would vote in favor of anything Reeves recommended. Because such speculation will not serve to create a genuine issue of material fact, summary judgment is due to be **GRANTED** in favor of the Jackson County Board of Education, Bart Reeves, and Tina Hancock as to Count I.

Similarly, Bailer has offered nothing more than conclusory statements and speculation regarding his allegation that Reeves and Hancock conspired to have him terminated from his employment with the school system. Accordingly, there is no genuine issue of material fact as to whether an agreement existed between Reeves and Hancock. Consequently, summary judgment is due to be **GRANTED** in favor of Bart Reeves and Tina Hancock as to Count IV.

A separate order will be entered contemporaneously with this memorandum opinion.

**DONE** and **ORDERED** this October 17, 2019.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE